**HENRI BENDEL, INC., Plaintiff,**

v.

**SEARS, ROEBUCK AND CO. and Circle of Beauty, Inc., Defendants.**

**No. 96 Civ. 5241(DC).**

United States District Court, S.D. New York.

Oct. 29, 1998.

Colucci & Umans by Frank J. Colucci, Courtney Wilson, New York City, for plaintiff.

Fross Zelnick Lehrman & Zissu, P.C. by Glenn Mitchell, Gregory P. Gulia, New York City, for defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

In this case, plaintiff Henri Bendel, Inc. ("Bendel's") alleges that its brown and white striped trade dress was infringed by the sale of green and white striped cosmetic bags by defendants Sears, Roebuck and Co. ("Sears") and Circle of Beauty, Inc. ("Circle of Beauty"). Defendants move for summary judgment dismissing the complaint on the ground that Bendel's purported trade dress is not protectable or, alternatively, that at best Bendel's can claim proprietary rights only to a specific brown and white striped pattern and not to a general design of a cosmetic bag with striped fabric, plastic coating, and gold zipper pull. For the reasons that follow, defendants' motion is granted and the

amended complaint is dismissed with prejudice.

## BACKGROUND

### A. *The Facts*

Bendel's is a retailer of "upscale" women's clothes and accessories, including cosmetic bags (the "Bendel Bags"). Bendel's "signature" mark is its distinctive brown and white striped pattern that it has used for many years on the Bendel Bags as well as on shopping bags, wallets, packaging for fragrances and lipsticks, gift boxes, hat boxes, umbrellas, tissue paper, awnings, store signs, and promotional items. (*See* Burstell Tr. at 50–53; Goldner Tr. at 36; Jones Tr. at 48–49; Monaghan Tr. at 22, 30–31; Burstell Aff. ¶¶ 4, 8; Mitchell Aff.Exs. 13, 14, 15; Mitchell Aff.Ex. 16 (Press Release states that in 1911, "Henri Bendel created a distinctive brown and white stripe pattern as his store's hallmark, integrating it into both packaging and store design . . . .")).

The Bendel Bags, which were first introduced in 1936 according to Bendel's, have the following common design elements: (1) brown and white stripes on fabric; (2) plastic coating; and (3) shiny, gold, rectangular zipper pulls with the registered trademark HENRI BENDEL in raised lettering. (Pl. Opp. at 1; Burstell Aff. ¶¶ 5, 7). The Bendel Bags are sold in a variety of shapes and sizes. For the fiscal years 1990 through 1997, the Bendel Bags generated total sales of approximately $16 million dollars. (Marlow Aff. ¶ 4). In-store advertising to promote the Bendel Bags for the same time period cost approximately $50,000 a year. In addition, of the $1 million dollars spent annually by Bendel's on outside advertising, approximately $25,000 is devoted to promoting the Bendel Bags. (*Id.* ¶¶ 5–7).

Numerous articles have appeared about the Bendel Bags in the fashion media. All of these articles focus on the brown and white stripe motif of the bags, rather than on any other design element. In fact, nowhere do these articles highlight gold zipper pulls or clear plastic coating. (*See,* Wilson Aff.Ex. 11 (containing dozens of articles about the Bendel Bags with titles such as: "Henri Bendel

Signature Brown and White Stripe Travel Accessories"; "Everybody wants those bags with the brown stripes"; and "Brown-striped handbags create industry fashion rage")). Bendel's own promotional literature on the Bendel Bags also focuses on the brown and white stripes without mentioning the other elements of the purported trade dress design. (*See* Wilson Aff.Ex. 12.A ("The Henri Bendel Brown & White Bag Collection"); Ex. 12.B ("The Henri Bendel Brown & White Bag"); Ex. 12.D (Bendel's advertisement displaying striped hat box); Ex. 12.F (Henri Bendel striped advertisement page; striped signature perfume bottle; striped gift boxes, striped lipsticks); Mitchell Aff.Ex. 15 (B00523 Internal Marketing Plan states "Market brown/white stripes (as a premiere brand) wherever appropriate.")).

Defendants sell seven cosmetic bags that contain several of the same features as the Bendel Bags (the "Sears Bags"). For instance, the Sears Bags have vertical stripes, clear plastic coating, and gold zipper pulls. Unlike the Bendel Bags, however, the Sears Bags have green and white stripes and their gold zipper pulls are round. (Adamko Aff. Ex. 5). Moreover, the gold zipper pulls have Circle of Beauty's own mark on them in raised lettering. (*Id.*).

The features that comprise Bendel's purported trade dress, with the exception of the mark HENRI BENDEL, are commonly found in the cosmetic bags industry. Defendants identify at least twelve retailers and/or manufacturers of cosmetic bags that use some if not all of the same elements as the Bendel Bags. (*See* Calhoun Aff.Exs. 1–2; Adamko Aff.Exs. 3–4; Robinson Aff.Exs. 6–7; Mitchell Aff.Exs. 8, 18, 22 (including pictures of similar cosmetic bags by Trina, Christian Dior, Designs on Travel, Lancome, Victoria's Secret, La Costa Spa, Graham Webb International, Saks Fifth Avenue, Samsonite, Designs on Travel, Fendi, Giorgio of Beverly Hills)).

### B. *Prior Proceedings*

Alleging that the "overall look and appearance of the Sears Bags['] size, shape, color, and composition was strikingly similar" to the Bendel Bags, Bendel's commenced this

suit against defendants on July 12, 1996 alleging violation of federal and state trademark law and asserting other common law claims.

Bendel's alleges that the following features comprise its trade dress: "(1) natural and brown vertical signature stripes on fabric, which stripes are also used by Henri Bendel on items other than the Bags, such as, Henri Bendel's signature fragrance, shopping bags, hat boxes, and accessory items such as, umbrellas and wallets; (2) easy-to-clean clear, plastic coating; (3) shiny, gold zipper pulls; and (4) the HENRI BENDEL registered trademark and service mark ... [that] appears on the zipper pulls." (Am.Cmplt.¶ 12).

Bendel's filed an amended complaint on July 16, 1996. Thereafter, defendants answered and the parties conducted discovery. This motion followed.

## DISCUSSION

### A. *Legal Standards*

#### 1. *Summary Judgment*

The standards governing motions for summary judgment are well-settled. Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record supporting a jury verdict in the nonmoving party's favor. *See id.* at 249–50, 106 S.Ct. 2505.

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party may not rest upon mere "conclusory allegations or denials," but

must set forth "concrete particulars" showing that a trial is needed. *National Union Fire Ins. Co. v. Deloach*, 708 F.Supp. 1371, 1379 (S.D.N.Y.1989) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984)).

#### 2. *Trade Dress Infringement*

Section 43(a) of the Lanham Act provides for a cause of action against one who "in connection with any goods ... uses in commerce or any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods ... by another person." 15 U.S.C. § 1125(a). Trade dress refers to "how a product looks, its total image, or its overall appearance." *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1068 (2d Cir.1995).

■■■ To prevail on a trade dress infringement claim, the plaintiff must prove two elements. First, plaintiff must prove that its trade dress is protectable by showing that the trade dress is distinctive. To do so, plaintiff must show that the dress is either "inherently distinctive" or has acquired distinctiveness through "secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir.1997). Second, plaintiff must prove infringement by showing that the defendants' trade dress has caused or is likely to cause consumer confusion. *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377 (2d Cir.1997); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir.1995).

■■■ In addition, eligibility for protection of an "identifying mark also depends on its nonfunctionality." *Mana*, 65 F.3d at 1068; *Jeffrey Milstein*, 58 F.3d at 31. Functionality is defined as "the quality essential to the product's purpose." *Id.* (citing *Two Pesos*, 505 U.S. at 775, 112 S.Ct. 2753). Indeed, "a design is legally functional, and thus unprotectable, if it is one of a limited number of

equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection." *Two Pesos*, 505 U.S. at 775, 112 S.Ct. 2753 (citing *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 426 (5th Cir.), *reh'g denied*, 736 F.2d 1526 (5th Cir.1984)). Thus, the functionality doctrine "prevents trademark law, which seeks to promote competition by protecting a firms's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995). Defendants bear the burden of proving functionality as a defense to an infringement claim. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75–76 (2d Cir.1985).

### B. *Defendants' Motion for Summary Judgment*

Even though defendants concede that brown and white stripes are associated with Bendel's, they contend that the overall trade dress of the Bendel Bags is not protectable. (Defs.Mem. at 12, 17, 28). Defendants further contend that even if Bendel's could prove that its brown and white stripes are entitled to protection, the amended complaint must still be dismissed because the Sears Bags do not use brown and white stripes. Defendants' major argument in support of their position is that the design features of the Bendel Bags—vertically striped fabric, clear plastic coating, and gold zipper pulls—are common in the cosmetic bags industry and that Bendel's is attempting through this lawsuit to "monopolize and appropriate" these common features for itself. (*See* Defs. Mem. at 8–11) (citing, *inter alia*, Mitchell Aff.Exs. 8, 12, 16, 18; Adamko Aff.Exs. 3, 4; Burstell Tr. at 23, 28–29, 93, 109, 129, 203–04, 234–36, 252, 259, 273–78).

### C. *Application*

■ For purposes of this motion, I assume that issues of fact exist as to the distinctiveness of Bendel's brown and white vertical stripes. Nonetheless, summary judgment dismissing the amended complaint is still appropriate. At best, the protectable aspect of Bendel's alleged trade dress is its specific brown and white stripe pattern. Bendel's cannot claim the exclusive right to use vertically striped, plastic coated fabric and gold zipper pulls on cosmetic bags.

Bendel's seeks in essence to do precisely what the functionality doctrine was designed to protect against, that is, Bendel's seeks to inhibit legitimate competition by controlling common and useful product features such as stripes, plastic coating, and gold zipper pulls. *See Qualitex*, 514 U.S. at 164–65, 115 S.Ct. 1300 and cases cited therein. There are only a limited number of designs available for cosmetic bags, however, and these features—vertical stripes, plastic coating, and gold zipper pulls—must remain available to competitors.

The record demonstrates that no less than twelve retailers and/or manufacturers of cosmetic bags sell bags containing some or all of these extremely common features. A reasonable jury could only conclude, therefore, that these features are functional. *See Landscape*, 113 F.3d at 378 n. 3 (discussing *Seabrook Foods, Inc. v. Bar–Well Foods Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A.1977) and whether a design is common, unique, or a refinement of commonly adapted form of ornamentation and noting that, in this regard, "objective consideration of the product and its similarity to others on the market will always be relevant and often decisive"). Accordingly, Bendel's cannot claim that these features are protected.

■ Bendel's contends that limiting protection to only its brown and white stripe pattern would erroneously overlook the total image of the Bendel Bags. The contention is unavailing. The only arguably distinctive feature of Bendel's purported trade dress is its signature brown and white stripes. Indeed, it is the brown and white stripes and not any other design element that adorn Bendel's shopping bags, gift boxes, hat boxes, wallets, tissue paper, umbrellas, store awnings, perfumes, and lipsticks.

Even assuming the distinctive brown and white striped pattern is protectable, no reasonable jury could conclude that the brown

and white striped trade dress was infringed by defendants' green and white striped bags.

## CONCLUSION

Defendants' motion for summary judgment is hereby granted and plaintiff's amended complaint is dismissed with prejudice. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.