**MULBERRY THAI SILKS, INC., Plaintiff,**

v.

**K & K NECKWEAR, INC., Defendant.**

**No. 94 Civ. 7401 (LAK).**

United States District Court, S.D. New York.

Sept. 20, 1995.

Opinion Granting Reconsideration but Adhering to Original Disposition Oct. 10, 1995.

Virginia R. Richard, Maribel Figuerdo, Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele and Richard, New York City, Suzanne Siebert, Majestic, Parsons, Siebert & Hsue, San Francisco, CA, for plaintiff.

Norman S. Beier, Abelman, Frayne & Schwab, New York City, Julius Herling, White Plains, NY, for defendant.

**OPINION**

KAPLAN, District Judge.

This action is the result of defendant's decision to produce "knock offs" of neckties designed and manufactured by the plaintiff. Although the economic stakes appear limited, the case presents an interesting question concerning the interface between the law of copyright and of trade dress and unfair competition. This is the Court's decision following a bench trial of the liability issues on a stipulated record.

*Background*

Plaintiff Mulberry Thai Silks, Inc. ("Mulberry") designs, manufactures and markets neckties. Unlike many other tie manufacturers, it has in-house designers who create all of the fabric designs that it employs. The designs then are printed at its direction at outside textile printers in color combinations, also known as colorways, specified by Mulberry. This case involves seven fabric designs known as Delauney, Descent, Egypt, Lineage, Maya, Nexus and Sunrise, all of which were created by Mulberry's design team in 1993 and all of which were part of Mulberry's spring 1994 Ziggurat tie collec-

tion. The collection was widely shown to the trade and the public beginning in the fall of 1993 and continuing through the spring of 1994. Mulberry began shipping to its retail store customers, and the ties went on sale at stores including Macy's, Bloomingdale's and A & S, in January 1994.

In or about March 1994, the divisional merchandise manager and buyer at NBO, a large discount retailer, suggested to defendant K & K Neckwear, Inc. ("K & K") that K & K produce a collection similar to Mulberry's Ziggurat collection. K & K then designed a collection that sought to come as close to the line as possible without crossing over into the realm of illegal copying.

In August 1994, Mulberry learned that ties made of fabrics apparently copied from Mulberry's designs were on sale at A & S and NBO. It purchased some of the allegedly infringing ties on August 19, 1994 and traced them back to K & K. On August 29, 1994, it obtained copyright registrations for the seven designs here at issue and, two days later, served notice of infringement on K & K and demanded that it cease and desist from marketing the copies. On September 6, 1994, K & K, without admission of liability, advised Mulberry that it had stopped making and marketing the designs in question. In subsequent discussions between the parties, K & K offered to pay Mulberry the net profit it had earned through sales of the designs at issue, but this was unsatisfactory to Mulberry.

Plaintiff commenced this action on October 13, 1994. It pleads three causes of action: copyright infringement, violation of the Lanham Act, and unfair competition. It seeks a permanent injunction, an accounting of K & K's profits, treble damages and attorneys fees, among other relief.

### Discussion

### The Copyright Infringement Claim

■ In order to establish copyright infringement, the plaintiff must show ownership of a valid copyright and unauthorized copying by the defendant of original constituent elements of the work. *Feist Publications, Inc. v. Rural Telephone Service Co.,*

499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Mulberry's copyright registrations are *prima facie* evidence of ownership and validity. 17 U.S.C. § 401(c). Copying may be established by proof of access and substantial similarity. *E.g., Weissmann v. Freeman,* 868 F.2d 1313, 1320 (2d Cir.), *cert. denied,* 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989). The test of substantial similarity, in Judge Learned Hand's classic statement, is "whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960).

■ Here, K & K's access is undisputed. The allegedly infringing designs admittedly were the result of NBO's suggestion that K & K produce something similar to Mulberry's products. The Court finds also that the K & K designs are substantially similar to Mulberry's. The parties have submitted seven color photographs, each depicting a Mulberry tie side by side with K & K's corresponding copy. (Jacobson Decl. Exs. 3–9) While careful study reveals subtle differences—e.g., curved lines changed to straight lines and *vice versa*—the Court finds that the overall impression created by K & K's ties is confusingly similar to that created by Mulberry's products. Put another way, the Court finds that the aesthetic appeal of both products is substantially the same. A tie buyer who had seen one of Mulberry's Ziggurat collection ties and wished subsequently to buy the same tie would be likely, upon seeing K & K's copy, to buy it in the mistaken belief that the buyer was purchasing the same tie that the buyer had seen previously—and *vice versa.* Indeed, defendant's only response to the copyright infringement claim is the assertion that Mulberry's designs are not copyrightable.

■ The basis of K & K's position is the assertion that Mulberry's collection simply reflects geometric elements that are common in the trade. In substance, then, defendant contests the validity of Mulberry's copyrights.

To be sure, copyright may subsist only in "original works of authorship." 17 U.S.C.

§ 102(a). But Mulberry's certificates of registration are *prima facie* evidence of validity and, therefore, of originality. The burden therefore is on the defendant to prove that the plaintiff's designs were not original. *E.g., Masquerade Novelty, Inc. v. Unique Industries, Inc.,* 912 F.2d 663, 669 (3d Cir. 1990); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright (hereinafter Nimmer) § 12.11[B][1] (1995). Moreover, "the originality needed to support a copyright merely calls for independent creation, not novelty"—it requires only that the copyrighted work not have been copied. 1 Nimmer § 2.01[A]. To quote Judge Hand again, "[I]f by some magic a man who had never known it were to compose Keats' Ode On a Grecian Urn, he would be an 'author,' and, if he copyrighted it, others might not copy that poem, though they might of course copy Keats." *Sheldon v. Metro–Goldwyn Pictures Corp.,* 81 F.2d 49, 54 (2d Cir.1936), *cert. denied,* 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936).

Here the evidence establishes, and the Court finds, that each of the seven designs copyrighted by Mulberry was an original creation by Mulberry's in-house design studio. In consequence, Mulberry's copyrights are valid, and they were infringed by K & K's designs.

*Trade Dress and Unfair Competition*

The relief available under the Lanham Act is not coextensive with that under the Copyright Act.[1] In consequence, the Court turns to Mulberry's Lanham Act and unfair competition claims.

■ The Copyright Act, of course, is the only source of protection against the copying, without more, of copyrightable material such as Mulberry's fabric designs. *Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994) (state cause of action preempted by federal copyright laws when state law right asserted is equivalent to rights protected under federal law); *G. Ricordi & Co. v. Haendler,* 194 F.2d 914 (2d

Cir.1952); *see Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 232–33, 84 S.Ct. 784, 789, 11 L.Ed.2d 661 (1963); *see Fabrication Enterprises, Inc. v. Hygenic Corp.,* 64 F.3d 53, 58 n. 4, (2d Cir.1995) (Lanham Act does not protect invention, which is the province of patent law); *Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.,* 40 F.3d 1431 (3d Cir.1994) (same); *Stormy Clime, Ltd. v. ProGroup, Inc.,* 809 F.2d 971, 977–78 (2d Cir. 1987) (same). But this proposition is not necessarily the end of plaintiff's claim. The Court assumes, without deciding, that a copyrighted or copyrightable design might be *used* in a manner that would entitle the designer to relief under the Lanham Act for reasons going beyond the plagiarism itself. For example, the unauthorized use of a copyrighted work of art by a well known artist on packaging might be likely to confuse consumers as to the artist's sponsorship or endorsement of the product. *See* 15 U.S.C. § 1125(a). The Court need not reach this question here, however. Even if the Copyright Act is not the exclusive basis for protection where Lanham Act concerns are present, Mulberry has failed to prove its case.

■ The plaintiff in a trade dress case must establish that the putative trade dress in question is protectible. This requires a showing that it performs the requisite source identification function, which in turn depends upon whether it is inherently distinctive or has acquired secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Mulberry argues that its fabric designs satisfy both criteria. The Court finds that they satisfy neither.

In *Two Pesos,* a case dealing with the design or format of a restaurant, the Supreme Court held that trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source of a product." 505 U.S. at ——, 112 S.Ct. at 2757. It held also that trade dress that is unique and a sufficiently valuable informational device is inherently distinctive, and warrants protec-

---

**1.** For example, the Copyright Act does not permit recovery of treble damages. *See* 17 U.S.C. § 504.

tion, "regardless of whether substantial consumer association yet bestows the additional empirical protection of secondary meaning." *Id.* at ——, 112 S.Ct. at 2758, *quoting Taco Cabana International, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1120 n. 7 (5th Cir.1991).

The manner of determining whether trade dress of the character at issue in this case is inherently distinctive is not so clear cut. In trademark cases, this Circuit long has followed Judge Friendly's classic typology of trademarks enunciated in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.1976). Putative marks are classified as generic, descriptive, suggestive, arbitrary or fanciful. Those that are generic receive no protection. Descriptive marks are protected only if they have acquired secondary meaning; in other words, they are not inherently distinctive. Suggestive, arbitrary and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Two Pesos, Inc.*, 505 U.S. at ——, 112 S.Ct. at 2757. Prior to *Two Pesos*, however, the Second Circuit had held that trade dress was protectible only on a showing of secondary meaning, thus obviating any need to consider the issue of inherent distinctiveness and the relevance of *Abercrombie* to that determination. *See, e.g., Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577 (2d Cir.1993). Subsequent to *Two Pesos*, it has applied the *Abercrombie* typology to the determination of inherent distinctiveness in a packaging trade dress case, *Paddington*, 996 F.2d 577, but it has not yet considered the issue in the context of a product design or configuration case. Thus, the applicability of *Abercrombie* in such cases remains an open question in this Circuit.

The Third Circuit recently argued in *Duraco* that *Abercrombie* does not translate especially well to trade dress cases in which the trade dress at issue is the configuration of the product, as is true here. While packaging, a common subject of trade dress protection, in some circumstances may be sug-

gestive or otherwise inherently inform the consumer of the source of the product contained within it, as did the restaurant decor at issue in *Two Pesos*, the design of the fabric used in a necktie is not suggestive of the product or its source at all—in a fundamental sense it is the product itself. *See* 40 F.3d at 1440–41. Nor does pinning the label "arbitrary" or "fanciful" on the design necessarily assist in focusing the analysis on the concern of the Lanham Act, confusion as to source or sponsorship. *See id.* A product design can be arbitrary or fanciful as those terms are used in common parlance without conveying or, for that matter, having the capacity to convey any information to the consumer concerning the source of the goods. Absent such a source identifying function, Lanham Act protection for arbitrary or fanciful product configurations risks affording protection for unique designs in circumstances in which there is no justification for providing protection beyond that afforded by patent and copyright law. *See id.* at 1446–47.

These considerations led the Third Circuit in *Duraco* to conclude that Lanham Act protection for product design should be narrowly confined and to reject application of *Abercrombie* to the determination of inherent distinctiveness in product configuration trade dress cases. In its place, it adopted a three prong test for determining whether design is inherently distinctive: the design must be (i) unusual and memorable, (ii) conceptually separable from the product, and (iii) likely to serve primarily as a designator of origin of the product. 40 F.3d at 1448–51.[2]

This Court need not choose between *Abercrombie* and *Duraco* in this case. Any appropriate test of the circumstances in which design may be a subject of Lanham Act protection without proof of secondary meaning—in other words, any test of when a design will be regarded as inherently distinctive—must take account of the essential purpose of the Lanham Act, which is to protect consumers against the risk of confusion as to

---

**2.** To be sure, *Duraco* has met with less than universal approbation. *Stuart Hall Co. v. Ampad Corp.*, 51 F.3d 780, 787–88 (8th Cir.1995) (declining to follow *Duraco*); *see Health o meter,* *Inc. v. Terraillon Corp.*, 873 F.Supp. 1160, 1170–71 (N.D.Ill.), *appeal dismissed without opinion,* 52 F.3d 342 (Fed.Cir.1995).

source, sponsorship or affiliation. *See* 15 U.S.C. § 1125(a). In consequence, and consistent with *Two Pesos,* a *sine qua non* of any test of inherent distinctiveness must be a requirement that the design be of such a character "that one can assume without proof that it automatically will be perceived by customers" as an identifier of the source of the product or, in a sponsorship or affiliation case, of the putative sponsor or affiliate. 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8.02[4], at 8–18.1 (3d ed. 1995) (hereinafter MCCARTHY); *see Seabrook Foods, Inc. v. Bar–Well Foods Ltd.,* 568 F.2d 1342, 1344 (C.C.P.A.1977). Applied to the facts of this case, this criterion requires that the intrinsic nature of Mulberry's fabric designs must identify ties made with those fabrics as coming from a particular source.

Based on the evidence in this case, and bearing in mind that Mulberry has the burden of proof, this Court finds that these fabric designs, at least as used in neckties, are not inherently distinctive. Neckties are little more than bits of fabric cut and sewn into a particular form. One is visually distinct from another almost entirely by virtue of differences in color and pattern, and this is as true of neckties made by a single manufacturer as of those made by different manufacturers. A manufacturer perhaps might incorporate sufficiently uncommon and striking design features in its otherwise different neckties as to make those common features inherently serve a trademark function, i.e., identify the different neckties as coming from a single source. But this is not such a case. Indeed, it is unnecessary here to articulate precisely the standard that would govern a close case. Suffice it to say that the Court finds that "the intrinsic nature" of these fabric designs do not "serve[ ] to identify a particular source of product." *Two Pesos, Inc.,* 505 U.S. at ——, 112 S.Ct. at 2757. They have no meaningful information content. *Id.* at ——, 112 S.Ct. at 2758. They are not inherently distinctive.

▮▮▮ Nor have Mulberry's designs acquired secondary meaning. A mark, or trade dress, has acquired secondary meaning when it has become synonymous in the minds of the relevant public with the source of the product. *E.g., Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 390 (2d Cir.1995). Its existence is a question of fact, and it depends upon factors including advertising expenditures, consumer studies, sales, competitors' attempts to plagiarize, and the length and exclusivity of use. *E.g., Arrow Fastener Co.,* 59 F.3d at 393; *Thompson Medical Co. v. Pfizer Inc.,* 753 F.2d 208, 217 (2d Cir.1985); *McGregor–Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1132 (2d Cir. 1979).

Here, Mulberry has offered no consumer study. While it states that it spent $25,000 on advertising in 1993, there is no evidence that it ever advertised the designs of the specific ties in question, which were not even shipped until 1994. There is simply no evidence of the volume of Mulberry's sales of these products or of any public association of these designs with plaintiff or any other particular source, whether or not known by name. In consequence, the Court finds that the designs in question have not acquired secondary meaning.

In view of the Court's conclusion that Mulberry's fabric designs are neither inherently distinctive in the relevant sense nor imbued with secondary meaning, Mulberry's Lanham Act claim must be dismissed. In consequence, there is no need for the Court to consider likelihood of confusion under the familiar *Polaroid* rubric unless that analysis is material to resolution of the state law unfair competition claim. *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

It frequently is written that a plaintiff may prevail on a New York law unfair competition claim by demonstrating a likelihood of confusion between the two products even absent secondary meaning. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 34–35 (2d Cir.1995); *Bristol–Myers Squibb, Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1048 (2d Cir.1992); *Perfect Fit Industries, Inc., v. Acme Quilting Co.,* 618 F.2d 950, 952–54 (2d Cir.1980). It is not clear, however, whether the plaintiff may prevail in a product configuration trade dress case without proof of in-

herent distinctiveness or secondary meaning where, as here, the trade dress in question is copyrighted. In such circumstances, there can be no confusion as to source. Any confusion between the parties' products would exist solely by virtue of the copying of the senior user's design, the proscription of and remedies for which flow exclusively from the Copyright Act. *See generally, e.g.,* 1 McCARTHY §§ 7.24–7.25. However, the Court need not address this issue. The only remedy plaintiff seeks on its state law unfair competition claim is the greater of plaintiff's damages or defendant's profits. (*See* Cpt ¶ E) As this measure of damages does not exceed the recovery available on plaintiff's claim under the Copyright Act, see 17 U.S.C. § 504, on which the Court already has held that defendant is liable, the Court need not rule on the unfair competition claim.

### Conclusion

Plaintiff is entitled to a permanent injunction restraining defendant from infringing its copyrighted designs. It is entitled also to any damages it can establish under the Copyright Act. Its trademark and unfair competition claims are dismissed.

Plaintiff may settle a permanent injunction on five days notice. As the issue of damages has been bifurcated, the parties are directed to appear for a status conference in Courtroom 12D on October 16, 1995 at 4:00 P.M. to address the further proceedings required on the damages issue as well as the possibility of settlement.

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to FED.R.CIV.P. 52(a).

SO ORDERED.

### MEMORANDUM OPINION ON RECONSIDERATION

Plaintiff moves, pursuant to Rule 59(e), for reconsideration of this Court's decision dismissing plaintiff's Lanham Act claim after trial on the ground that the trade dress at issue was not inherently distinctive and had not acquired secondary meaning. The motion for reconsideration is granted and, on reconsideration, the Court adheres to its original disposition.

Plaintiff's initial argument is that the Court applied the wrong standard in determining whether plaintiff's neckties were inherently distinctive. The Court, as plaintiff contends, first noted that the Second Circuit had not yet considered the applicability of the standard articulated in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir.1976), to the determination of inherent distinctiveness in product design or configuration trade dress cases. According to plaintiff, the Court then held that "[t]he appropriate analysis for this case is that applied by the Third Circuit in *Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.,* 40 F.3d 1431 (3d Cir.1994)." The Court then supposedly applied *Duraco* and held that plaintiff's trade dress was not inherently distinctive. Plaintiff contends that this was error because the Court overlooked the Second Circuit's recent decision in *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27 (2d Cir.1995), applying the *Abercrombie* test in a product configuration trade dress case.

Plaintiff is correct in noting that the Court did not discuss *Jeffrey Milstein*—which plaintiff failed to bring to the Court's attention—in connection with this point when it decided this case. The balance of its argument misstates this Court's analysis.

As this Court's opinion made perfectly plain, the Court recognized the existence of both the *Abercrombie* and *Duraco* approaches to the determination of inherent distinctiveness. Contrary to plaintiff's assertion, the Court explicitly avoided choosing between the two:

"This Court need not choose between *Abercrombie* and *Duraco* in this case. Any appropriate test of the circumstances in which design may be a subject of Lanham Act protection without proof of secondary meaning—in other words, any test of when a design will be regarded as inherently distinctive—must take account of the essential purpose of the Lanham Act, which is to protect consumers against the risk of confusion as to source, sponsorship or affiliation. [citation omitted] In consequence, and consistent with *Two Pesos [Inc. v. Taco Cabana, Inc.,* 505 U.S. 763,

**796**

112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) ], a *sine qua non* of any test of inherent distinctiveness must be a requirement that the design be of such a character 'that one can assume without proof that it automatically will be perceived by customers' as an identifier of the source of the product ..." *Mulberry Thai Silks, Inc. v. K & K Neckwear, Inc.,* 897 F.Supp. 789, 794 (S.D.N.Y. 1995) (citation omitted).

A choice was unnecessary because this Court concluded that plaintiff's products were not inherently distinctive under either *Abercrombie* or *Duraco* because their intrinsic nature did not serve to identify a particular source. "They have no meaningful information content." *Id.* As the Second Circuit recently said in *Fabrication Enterprises, Inc. v. Hygenic Corp.,* 64 F.3d 53, 57 (2d Cir.1995), "to earn protection under the Lanham Act, a manufacturer must show that its trade dress is capable of distinguishing the owner's goods from the competition's and identifying the source of the goods." Plaintiff failed to prove that its trade dress meets this standard.

Nothing in *Jeffrey Milstein* warrants a different result. The case involved the question whether greeting card trade dress consisting of photographs die cut to the shapes of the objects depicted in the greeting cards warranted trade dress protection. The Second Circuit did indicate, albeit without extended discussion, that the *Abercrombie* factors apply to the determination of protectability in trade dress cases. 58 F.3d at 31–32. But it went on to hold that the trade dress at issue was not protectable because the plaintiff was "effectively seeking protection for an idea or concept—die cut photographic greeting cards." *Id.* at 33. And it did so in order to avoid giving the first user of the general idea of die cut photographic products a monopoly to which it would not be entitled under the copyright and patent laws. *Id.* at 32–34.

Lest there be any confusion, this Court finds, in the language of *Abercrombie,* that the fabric designs at issue are not arbitrary, fanciful or suggestive. These terms must be read in light of *Two Peso*'s admonition that trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source of a product." ——— U.S. at ———, 112 S.Ct. at 2757. Plaintiff's view would result in Lanham Act protection being extended to a design without regard to whether the design serves the purpose that the Lanham Act was intended to protect.

While one or another detail of plaintiff's designs may be arbitrary or fanciful in the sense that it reflects a unique variation on a commonplace theme, the focus in determining distinctiveness is on the overall appearance of the product when viewed in its entirety. *See, e.g., Jeffrey Milstein, Inc.,* 58 F.3d at 32. The use of geometric design elements, bright colors and the like is common in neckties. There is nothing about plaintiff's designs that inherently "serves to identify [their] particular source" either by name or by conveying a sense that they come from a particular, though anonymous, source. To afford Lanham Act protection to plaintiff's designs would be to give plaintiff a monopoly over a range of fabric designs employing geometrics and bright colors despite the lack of any justification for doing so in the name of protecting consumers against confusion as to source.

This conclusion is reinforced by the Second Circuit's decision, the day prior to the decision in this case, in *Mana Products, Inc. v. Columbia Cosmetics Mfg. Corp., Inc.,* 65 F.3d 1063, 1068–69 (2d Cir. 1995). The Court there observed that distinctiveness is "the first element that must be proved in a trade dress infringement cause of action." It noted also that:

> "where it is the custom in a particular industry to package products in a similar manner, a trade dress done in that style is likely to be generic. In other words, when the possibilities of the ultimate trade dress for a product are limited, and the trade dress is therefore in commonplace use, it is unlikely that consumers will view the trade dress as distinctive of the goods or services of a particular seller." *Id.,* at 1069, (citations omitted).

It went on to hold that "in the compact industry, nothing about a rectangular or square shape or black color is striking, unusual, or otherwise likely to differentiate the products of a particular producer" and that the plaintiff's trade dress was not protectable. *Id.* (citations omitted). So too here.

The plaintiff in this case has failed to prove that its particular use of bright colors and geometric patterns, in an industry in which the use of such design elements is common, is "striking, unusual, or otherwise likely to differentiate the products of a particular producer." The plaintiff's trade dress therefore is not arbitrary, fanciful or suggestive.

Plaintiff contends also that the Court's finding that Mulberry's designs have not acquired secondary meaning is contrary to the evidence of record and to the Court's findings of fact. All of the matters advanced in the motion were considered by the Court in making its finding; the motion in this regard is no more than a rehashing of arguments already made and rejected. Only one of the points made warrants discussion, and that only because plaintiff's motion distorts the Court's holding.

Plaintiff's argument rests on a misleading quotation from the Court's opinion. It contends that the Court "found as a fact that Mulberry ties and K & K were so similar that 'the tie buyer who had seen one of Mulberry's Ziggurat collection ties ... would be likely, upon seeing K & K's copy, to buy it in the mistaken belief that the buyer was purchasing the same tie that the buyer had seen previously.'" It argues that this finding necessarily compels the conclusion that there "is *mental association* of Mulberry's product trade dress with a *particular source.*" (Pl.Br. 20) (Emphasis in original) Plaintiff, however, has misquoted the opinion and come to an erroneous conclusion.

What the Court actually wrote was this, with the portions omitted by plaintiff italicized:

"*While careful study reveals subtle differences—e.g., curved lines changed to* straight lines and vice versa—the Court finds that the overall impression created by K & K's ties is confusingly similar to that created by Mulberry's products. Put another way, the Court finds that the aesthetic appeal of both products is substantially the same. A tie buyer who had seen one of Mulberry's Ziggurat collection ties *and wished subsequently to buy the same tie* would be likely, upon seeing K & K's copy, to buy it in the mistaken belief that the buyer was purchasing the same tie that the buyer had seen previously ..."

The point that plaintiff fails to recognize is that two designs may be sufficiently similar to be mistaken, one for the other, without either design being associated with any particular source. Certainly, for example, two solid navy blue ties from different manufacturers could, and probably would, meet that description. The Court's finding, therefore, is that the plaintiff's designs and the knock-offs are so similar that they have the same aesthetic appeal and, indeed, that one probably would be mistaken for the other with some frequency by a person looking to find a tie that matched one seen earlier. But the plaintiff, although it has proved that the designs are sufficiently original to warrant copyright protection, has failed to prove that they are associated in the public mind with any source, identified or anonymous.[1]

The motion for reconsideration is granted and, on reconsideration, the Court adheres to the original judgment.

SO ORDERED.

1. Plaintiff's other complaints about the finding of lack of secondary meaning are entirely meritless. To quote plaintiff's brief, "[t]he prime element of secondary meaning is a mental association in the buyer's mind between the alleged mark or trade dress and a single source of the product." (Pl. Br. 19) (citations omitted) The elements relevant to the determination, as plaintiff acknowledges (*id.*), are those enumerated in *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1222 (2d Cir.1987), and *Mana Products, Inc.* But the evidence offered by plaintiff failed to establish to this Court that these particular fabric designs are mentally associated in the minds of buyers with a particular source.

There was no consumer study. Evidence of sales success, which was limited, is far from conclusive in any case. The fact that defendant knocked off the designs, with minor variations, establishes that the defendant thought the designs attractive and likely to sell, but does not compel or, in this case, warrant the conclusion that the designs were associated with a particular source, anonymous or identified. The evidence with respect to advertising and media attention, which at least in part was not tied specifically to these particular designs and to that extent was not material, was insufficiently persuasive.