**GREAT AMERICAN FUN CORP., Plaintiff,**

v.

**HOSUNG NEW YORK TRADING, INC.**

and

**Kingsland, Inc., Defendants,**

v.

**GREAT AMERICAN FUN CORP. and Great American Fun Corp. (Hong Kong), Counterclaim Defendants.**

No. 96 Civ. 4100 (LAK).

United States District Court,
S.D. New York.

April 17, 1997.

Kenneth A. Plevan, Stephanie J. Kamerow, Skadden, Arps, Slate, Meagher & Flom, Eric L. Brown, for Plaintiff.

Robert J. Kenney, Birch, Stewart, Kolasch & Birch, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Cuddly stuffed toys conjure up warm images of children's care free play. This case illustrates the fact that there is nothing warm or care free about the competition among the manufacturers of those toys. Each side accuses the other of copyright and trademark infringement. The action is before the Court for decision after trial.

### Facts

#### The Parties

Plaintiff Great American Fun Corporation ("GAF") is a toy manufacturer. Its principals are H. Brian Haney and Morton Rosenberg.

Defendant Hosung New York Trading Co. ("Hosung") also is a toy manufacturer of many years standing whose principal is John Chae. Defendant Kingsland Corporation ("Kingsland") in substance is a partnership owned 70 percent by Mr. Chae and 30 percent by Ronald Bonafato. Kingsland functions essentially as a commission sales agent for certain of Hosung's products.

#### The Products

#### GAF

The tale of the GAF products relevant here began on May 6, 1994 when Gene Gress of Coach House, a GAF customer, sent GAF a plush-covered marionette and asked whether GAF would be interested in making it for Coach House and, if so, at what price. Many of the details of what transpired are disputed, but the Court finds the following:

The marionette that Gress sent to OAF was made by an El Paso, Texas, company called Chico Arts and was called Walking Willie. (PX 3)

Walking Willie is a two-legged item, approximately 34 inches high, coated entirely in high-pile plush. It has a flattened round head about 7 inches in diameter, a pair of large two-piece plastic eyes consisting of a black disc encased in a larger clear outer covering and known as "googly" eyes, bushy eyebrows and a flat mouth consisting of a felt-like material, which gives Walking Willie a somewhat stunned look. The neck, in the shape of a backwards "L," accounts for approximately a third of the marionette's height. The body is roughly the same size and shape as the head. Affixed to the body is an 8 inch tail and a pair of spindly, jointed legs, terminating in round weighted feet. The legs can extend to 15 inches but are a few inches shorter when the creature is "walking." Walking Willie's most notable feature is its amusing elastic gait when it is manipulated by a puppeteer. Walking Willie does not resemble any animal with which the Court is familiar. The parties appropriately described it as a monster.

Gress bought two dozen Walking Willies from Chico and, when they sold quickly, decided on behalf of Coach House that he was interested in finding another, cheaper source. He sent samples both to GAF and another supplier. The Court finds that the sample that Gress sent to GAF bore a copyright notice indicating that the copyright belonged to Chico Arts' owner, Doyle C. Harden, and that Gress told GAF"s Haney that Coach House had sold two dozen of the marionettes and asked among other things whether there would be a copyright problem in making and selling copies.[1]

Haney and Gress quickly agreed that GAF would manufacture the product, that GAF would own the copyright, and that Coach House would have an exclusive on the product for a period of time. GAF thereupon produced its own version of Walking Willie, which it called Limber Louie. (PX 5)

Limber Louie closely resembles its template, Walking Willie. The only significant differences between the two are that (1) Limber Louie has flat eyes made out of a felt-like material rather than plastic, googly eyes, (2) Limber Louie is lipless, although it possesses a tongue, (3) Limber Louie has tufts of fur of a second color in the general area of the mouth, and (4) Limber Louie's plush is softer and slightly longer than that of Walking Willie.

---

1. The Court does not credit Haney's contention that the sample he received bore no copyright notice or his claim that Gress told him that he had bought the sample at a craft fair in Mexico.

GAF applied for registration of copyright on its product. In the application, Haney swore that GAF had created the product and did not disclose the existence of Walking Willie, its prior sales in the United States, or its role in the creation of Limber Louie. (Def.Mem.Ex. E)

Limber Louie enjoyed considerable success. From the time of its introduction in late 1994 through August of 1996, over 650,-000 of the items were sold, grossing over $3 million. (DX 48) Due to the success of Limber Louie, GAF developed several other puppets in the Limber series, including Limber Flamingo. (PX 8)

Limber Flamingo shares the size, dimensions, plush covering and distinctive gait of Limber Louie. It differs, however, in several respects: (1) its face is bird-like, including a narrow pink beak and black plastic eyes, (2) its feet are covered in short fur and are three-toed and (3) its tail is short, curved and colored differently from its body. Limber Flamingo's success was more modest, but still considerable: GAF sold approximately 80,000 of its Limber Flamingo marionettes, grossing over $350,000.

### Hosung's Allegedly Infringing Products

The first of the two allegedly infringing Hosung products is a plush-covered marionette known as Doozy Bird. (PX 12) Its provenance too is disputed. The Court finds the following.

Mr. Chae and an Australian customer, Peter Atkinson, discussed the possibility of Chae's making a bird-like marionette for Atkinson in the spring of 1994. Nothing happened, however, until March 1995 when Atkinson raised the issue again by sending Chae a sample of the sort of thing he had in mind. (DX 14) The sample quite obviously is an imperfect but nevertheless extremely close copy of Walking Willie.[2] When the sample arrived, Chae made up two samples of his own for Atkinson's consideration. One was an exact or nearly exact copy of the Atkinson sample. The other was the marion-

ette that later became known as Doozy Bird. (PX 12) In explaining the Doozy Bird sample to Atkinson, Chae later wrote that he wanted to make something that was not an exact copy of Atkinson's sample.

Doozy Bird's size and dimensions are substantially identical to those of the Walking Willie and Limber puppets and shares their distinctive gait. Doozy Bird, however, differs in several critical respects: it has a large, soft triangular beak and convex plastic eyes, and its plush covering is shorter and more fur-like than that of plaintiff's products.

The second accused product is another plush-covered marionette called Floozy Flamingo. (PX 13) It too is a four-string marionette and walks with the same distinctive gait as the other puppets. The shape of the head and the beak, however, differ significantly from any of the other puppets before the Court and are reminiscent of a cartoon flamingo. Its legs are covered in short fur and are a different color than the rest of the puppet's body.

### The First Litigation

In April 1996, GAF brought an action, No. 96 Civ. 2986(LAK), against Hosung, Kingsland and F.A.O. Schwarz, in which it claimed that the Doozy Bird marionette infringed OAF's Limber puppets' copyright and trade dress. GAF moved for a preliminary injunction. Its papers included affirmations of Haney and Rosenberg in which they claimed that Limber Louie was an original creation of Rosenberg. There was no reference whatever to Walking Willie or to the dealings with Gress.

Hosung discovered the facts concerning Walking Willie in advance of the scheduled preliminary injunction hearing. It filed papers laying out the role of Chico Arts in creating Walking Willie and describing Gress' role in the development of Limber Louie. Upon reading the opposing papers, Haney and Rosenberg advised their litigation

---

**2.** It is unclear who made the sample and how it came into Atkinson's possession. The Court notes, however, that all of these produces are

manufactured in China. While the point is not material, it seems quite likely that the Atkinson

counsel of what had transpired.[3] The case was voluntarily discontinued prior to the hearing. GAF thereupon approached Chico Arts and procured an assignment of its Walking Willie copyright.

On March 20, 1997, the Court granted defendants' motion for attorney's fees and costs incurred in defending the first litigation. *Great American Fun Corp. v. Hosung New York Trading, Inc.*, No. 96 Civ. 2986(LAK), 1997 WL 129399 (S.D.N.Y. Mar.20, 1997).

### The Monkeys

Hosung copyrighted a monkey hand puppet known as Huggable Monkey in the early 1980s. (Chae Dec. Exs. C, D) Huggable Monkey is a plush-covered monkey hand puppet, the body of which is approximately one foot in length. It has long arms and legs, both measuring approximately 18 inches. Upon the hands and feet are small patches of velcro, which enable one playing with the toy to wrap and fix the extremities around him or herself. The face is plainly simian. It has raised ears, a mouth which opens, a red tongue, a squeaker and a pair of black plastic eyes.

GAF also produces a monkey hand puppet, known as Huggy Harry, which features a similarly proportioned body and head. Its arms are 14 inches long and its legs are 22 inches in length. Its hands and feet terminate in velcro-coated hands and feet and it too has a squeaker. Huggy Harry is covered in a plush slightly higher than that of Huggable Monkey, has a long tail, is tongue-less and possesses a stuffed snout.

### The Present Litigation

GAF brought this suit on May 31, 1996 against defendants and Shilla International Company[4] claiming that Doozy Bird and Floozy Flamingo infringed on the Walking Willie copyright, the Limber puppets' deriva-

tive copyright and the Limber puppets' trade dress. Defendants counterclaimed,[5] alleging that Huggy Harry infringes on the copyright and trade dress of Huggable Monkey. The case was tried to the Court in November 1996.

### Discussion

### GAF's Claim

GAF asserts claims for infringement of both the Walking Willie and Limber copyrights, the Limber puppets' trade dress, and unfair competition.[6]

### GAF's Copyright Claim

GAF lists nine specific features of the Hosung birds that allegedly infringe on the Walking Willie and Limber copyrights: (1) identical body shape, (2) identical size and dimensions, (3) shaggy and furry bodies, (4) large, heavy, weighted feet, (5) elongated neck and legs, (6) supple limbs and body, (7) identical positioning of strings on body, (8) bright colors, and (9) fantastic appearance. Defendants respond that several of these— the underlying mechanical elements enabling the gait—are functional and thus not copyrightable and that any remaining similarities are insufficient to support plaintiff's infringement claim.

"In order to prove infringement a plaintiff must show ownership of a valid copyright and copying by the defendant." *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977). "The plaintiff may prove copying by direct evidence, or by showing that the defendant had access to the plaintiff's work and that the works are similar enough to support an inference that the defendant copied the plaintiff's work." *Fisher–Price, Inc. v. Well–Made Toy Manufacturing Corp.*, 25 F.3d 119, 123 (2d Cir.1994). Copying is inferred when "the claimant ... demonstrate[s] a substantial similarity between the copyrighted work and the alleged

---

sample was a Chinese-made counterfeit of the Walking Willie.

**3.** Haney and Rosenberg conceded the facts concerning Chico Arts and Gress through their own counsel.

**4.** The suit against Shilla was dismissed with prejudice on November 14, 1996.

**5.** Defendants assert their counterclaim against both GAF and GAF (Hong Kong).

**6.** GAF claims that it has amended the registrations of the Limber puppets to claim protection as works derivative of Walking Willie.

copy. This is a factual question, and the appropriate test for determining whether substantial similarity is present is whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966). The fact finder excludes any uncopyrightable elements of the copyrighted work in making this determination. *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir.1995).

"Pictorial, graphic, and sculptural works" are copyrightable under the Copyright Act of 1976. 17 U.S.C. § 102. This category "shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned." 17 U.S.C. § 101. Toys fall "within the class of 'pictorial, graphic, and sculptural works' covered by" the Copyright Act. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985) (Friendly, J.).

■ The Court credits the testimony of Chae, Doozy Bird's creator, and finds no direct evidence of copying. (Tr. 65–67) Accordingly, it is necessary to determine whether access plus substantial similarity have been proven. Chae admittedly had access to a near replica of Walking Willie, thus establishing access. (Tr. 65–67, DX 14) Infringement therefore rests on the issue of substantial similarity.

It is an axiom of copyright law that a "plaintiff must show that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea. The means of expression are the 'artistic' aspects of a work; the 'mechanical' or 'utilitarian' features are not protectible." *Fisher-Price*, 25 F.3d at 123. *Accord, Durham Industries v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir.1980) ("copyright protection extends only to the artistic aspects, but not the mechanical or utilitarian features of a protected work."). Mechanical,

utilitarian or functional elements are those driven by mechanical, utilitarian or functional concerns. *See Entertainment Research Group, Inc., v. Genesis Creative Group, Inc.* 853 F.Supp. 319, 322 (N.D.Cal.1994).

■ The fourth, fifth, sixth and seventh bases upon which plaintiff predicates its infringement claim properly fall under the mechanical/utilitarian/functional rubric. The weighting, flexibility and extended length of the marionettes' legs and feet, which enable the puppets to "walk," and the positioning of strings enabling the puppeteer to control the walk are driven by wholly functional aims.[7] The Court finds that these elements do not express an artistic idea and, in consequence, are unprotectable under the copyright law. The Court's substantial similarity analysis therefore is limited to the puppets' body shapes, sizes and dimensions, bright colors and fantastical appearance.[8] *Fisher-Price*, 25 F.3d at 123.

The substantial similarity analysis necessarily is somewhat subjective, as it appeals to the aesthetic sensibilities of the viewer. *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960). Doozy Bird undoubtedly is a bird, although its similarity to an ostrich, the animal Chae intended to represent, is tenuous, while plaintiff's creation is fantastical. Doozy Bird's plush resembles the feathery covering of a bird, while plaintiff's puppet features longer and wilder covering. The creatures do not look alike. The puppets' similarity, putting aside their functional or mechanical features, is limited to their similar size and shape, long legs and neck and bright coloring. The Court concludes that these shared characteristics do not support a finding of substantial similarity.

The Court reaches the same conclusion with regard to the flamingoes. Floozy Flamingo unquestionably is a flamingo. In contrast, Limber Flamingo,[9] while certainly avi-

---

7. Plaintiff conceded at trial that the gait of the puppets was unprotectible. (Tr. 169, 185) Plaintiff first admitted, but then retracted its admission, that the functional elements enabling the walk were unprotectible. (Tr. 169, 178–83)

8. Plaintiff disclaimed the copyrightability of its puppets' shaggy and furry bodies at trial. (Tr. 169)

9. Plaintiff claims that Floozy Flamingo infringes on both the Walking Willie and Limber Flamingo

an, does not strike the viewer as flamingo-like. Floozy Flamingo's face is dominated by a large, soft, two-colored beak, while Limber Flamingo's proboscis is small and monochromatic. Floozy Flamingo's eyes are set off from its plush head with a patch of short fir, a feature Limber Flamingo lacks. Floozy Flamingo's legs are covered in low-pile plush differently colored than the rest of the product's body while Limber Flamingo, with the exception of its feet, is a single color and fur length. In addition, Limber Flamingo possesses three-toed, short-furred feet, while the allegedly infringing flamingo lacks digits and has long-furred feet. Finally, the head of Floozy Flamingo is substantially smaller than that of Limber Flamingo. The Court finds no substantial similarity between the flamingoes.

*The Trade Dress Claim*

█ GAF contends that Doozy Bird and Floozy Flamingo infringe on the trade dress of the Limber birds. Hosung responds that the Limber birds' trade dress is not distinctive and that whatever degree of similarity might exist derives from shared functional elements.

A product's trade dress "includes the total look of a product and its packaging and even includes the design and shape of the product itself." 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8.4, at 8–8 (4th ed.1996). Such features as the "size, shape, color or color combinations, texture, or graphics" of the products are to be considered. *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 967 (2d Cir. 1995).

"To prevail on a claim of trade dress infringement, a plaintiff must establish (1) that its trade dress is distinctive either (a) because it is inherently so or (b) because it has acquired secondary meaning, and (2) that a likelihood of confusion exists between its product and the defendant's product." *Id.* "Even if a product's trade dress is distinctive, however, an alleged infringer can defeat

Lanham Act protection by showing that the trade dress, or a feature of the trade dress, is functional." *Fabrication Enterprises, Inc. v. Hygenic Corp.*, 64 F.3d 53, 57–58 (2d Cir.1995); *see Mulberry Thai Silks, Inc., v. K & K Neckwear, Inc.*, 897 F.Supp. 789, 792–93 (S.D.N.Y.1995).

The Court need consider only likelihood of confusion, which is determined upon consideration of the factors laid out in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961): "the strength of [the prior owner's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap [between the two products], actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." *Id; accord, e.g., Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1043 (2d Cir.1992).

The Court finds that the *Polaroid* factors militate against a finding of likelihood of confusion. The strength of plaintiff's trade dress, which "is measured by its distinctiveness or the degree to which it indicates the source or origin of the product," is weak if indeed it is protectible at all. *Bristol–Myers*, 973 F.2d at 1044. The Limber name is descriptive, the packaging is generic and the shape of the puppets when immobile, as they are when sold, is that of a typical marionette and hence not distinctive.

Most significantly, Doozy Bird and Floozy Flamingo bear little similarity to Limber Louie and Limber Flamingo, respectively, as stated above. In addition, the packaging in which the products are sold is not alike.[10] Limber Louie is packaged in a plastic bag, to the top of which is affixed a cardboard placard 14.5 inches long and five inches high. The placard is dominated by bright colors, three drawings demonstrating Limber Louie in action, and a cartoon caricature of Limber

but presses the claim only with respect to the latter (*See* PTO I I)

**10.** GAF's counsel stated at trial that the trade dress claim was a "more difficult" one than the

copyright claim, acknowledging that "the primary protection for this sort of thing ought to be a copyright." (Tr. 171)

Louie. (PX 39) The Doozy Bird, which also is wrapped in plastic, is headed by a placard, 3 inches by 10 inches, with purple and blue writing and a single drawing of Doozy Bird. (PX 40) The placards, like the puppets themselves, bear little resemblance to one another, as Haney admitted at trial. (Tr. 160–61).[11]

The only evidence of actual confusion is the fact that F.A.O. Schwarz on one occasion displayed Floozy Flamingoes but mismarked them as Limber Louies. (PX 58) Especially in view of Chae's selection of the prototype that was not a copy of Walking Willie in preference to the exact copy, the Court finds that Hosung did not act in bad faith. These factors comfortably outweigh any countervailing considerations.[12] Accordingly, the Court finds no likelihood of confusion and dismisses GAF's trade dress claim.

### Unfair Competition

Plaintiff claims also that defendants violated New York State's prohibition on unfair competition. "[N]o man can sell his goods as those of another. 'He may not through unfairness, artifice, misrepresentation or fraud, injure the business of another, or induce the public to believe his product is the product of that other.'" *Findlay v. Findlay*, 18 N.Y.2d 12, 19–20, 271 N.Y.S.2d 652, 656, 218 N.E.2d 531, 534 (quoting *World's Dispensary Medical Ass'n v. Pierce*, 203 N.Y. 419, 424, 96 N.E. 738, *cert. denied*, 385 U.S. 930, 87 S.Ct. 289, 17 L.Ed.2d 212 (1966), *modified*, 18 N.Y.2d 676, 273 N.Y.S.2d 422, 219 N.E.2d 872 (1966). Because the Court finds no evidence of untoward behavior on the part of defendants, GAF's unfair competition claim is dismissed.

### The Counterclaim

Hosung asserts that GAF's monkey hand puppet, Huggy Harry, infringed on Huggable Monkey's copyright and trade dress.

### The Copyright Counterclaim

■ Hosung does not contend that the concept of a hand puppet or the patches of velcro on the puppet's hands and feet are protectible. It limits its infringement claim to the facial features, squeaker and fabric covering of Huggy Harry. GAF counters that Huggable Monkey's copyright is invalid on multiple theories, most notably that the idea of a stuffed monkey is inseparable from Huggable Monkey's expression of that concept.

Hosung may establish copying by direct evidence or by showing that GAF had access to Huggable Monkey and that the Huggy Harry is sufficiently similar to support an inference that GAF copied Hosung's work. *Fisher–Price*, 25 F.3d at 123.

Hosung has failed to adduce direct evidence of copying, although Haney admits familiarity with the Huggable Monkey. (Tr. 36) The inquiry thus is limited to the degree of similarity between the monkeys.

The monkeys are not substantially similar in their non-functional elements. Their facial features do not look alike—Huggable Monkey's face is skin-colored and fur-less, exclusive of the jaw which is a low-pile white plush. It has a red tongue, large black plastic eyes and glued-on brown felt nostrils. Huggy Harry, in contrast, has a single-colored facial area (with the exception of the inside of the mouth, which is ecru in hue), which is covered in a low-pile plush. It lacks a tongue and is nostril-less. The area above the mouth protrudes to a far greater extent than does that of Hosung's monkey. Huggy Harry's eyes include irises and are much smaller than those of Huggable Monkey.

■ Hosung claims also that it has a protectible interest in Huggable Harry's fur covering. "[S]imilarity in expression is non-

---

11. Haney's testimony was confused and inconsistent as to whether Limber Flamingo was packaged with tags different than those affixed to Limber Louie. (Tr. 53–55)
Floozy Flamingo's tag is nearly identical to that of Doozy Bird, with the name and picture of Floozy Flamingo substituted. (PX 58)

12. These include the low-level sophistication of the buyers and the fact that, when competing products are involved, "proximity of the products in the marketplace [ ] is necessarily answered in favor of the senior user." 973 F.2d at 1044. The remaining factors are of little aid in the inquiry. The quality of the goods is basically identical and "the likelihood of bridging the gap is not a relevant inquiry" when competing products are at issue. *Bristol–Myers*, 973 F.2d at 1044.

infringing to the extent the nature of the creation makes similarity necessary, and that 'indispensable expression' of a generalized idea may be protected only against virtually identical copying.... [W]hen an abstract idea and its expression are 'inseparable,' copying the expression will not be barred, since to protect the expression would confer a monopoly of the idea upon the copyright owner." *Gund, Inc. v. Smile Int'l, Inc.,* 691 F.Supp. 642, 645 (E.D.N.Y.1988), *aff'd,* 872 F.2d 1021 (2d Cir.1989) (citations omitted). Monkeys are fur-covered animals, and any stuffed monkey worth its salt, puppet or otherwise, will be fur-covered. Huggable Monkey's fur covering, therefore, is unprotectible, as fur covering is an essential element of simian identity. That leaves the squeaker. As it is a purely utilitarian feature, it falls within the ban on copyrighting functional elements. 17 U.S.C. § 101.

The Court concludes that Huggable Monkey's fur covering and squeaker are not copyrightable, and no substantially similarity exists between the facial features of Huggable Monkey and Huggy Harry. The copyright counterclaim is dismissed.

*The Trade Dress Counterclaim*

■ Hosung claims trade dress protection for Huggable Monkey's allegedly unique operation, facial features and color. (PTO, Ex. C, ¶ 97) Nevertheless, the parties barely have discussed the claim in their submissions. Hosung's claim of unique puppet operation apparently refers to the fact that Huggable Monkey is a hand puppet with velcro on its limbs, which permits the puppet to "hug" the user. GAF responds that Huggable Monkey's trade dress is unprotectible.

As stated above, trade dress is protectible if it identifies a product's source of origin, either because it is inherently distinctive or because it has acquired secondary meaning. Inherent distinctiveness requires "that the design be of such a character 'that one can assume without proof that it automatically will be perceived by customers' as an identifier of the source of the product ..." *Mulberry,* 897 F.Supp. at 794 (quoting 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8.02[4], at 8–18.1 (3d

ed.1995)). Huggable Monkey's "design" is simply that of a plush-covered monkey puppet with velcro on its limbs. The Court finds that no appreciable number of consumers would associate Huggable Monkey with any particular source and therefore that the trade dress is not inherently distinctive.

Nor has Huggable Monkey acquired secondary meaning. "A mark, or trade dress, has acquired secondary meaning when it has become synonymous in the minds of the relevant public with the source of the product. Its existence is a question of fact, and it depends upon factors including advertising expenditures, consumer studies, sales, competitors' attempts to plagiarize, and the length and exclusivity of use." *Mulberry,* 897 F.Supp. at 789 (citations omitted). While some evidence of sales and length of use was adduced at trial, Hosung failed to present the Court with evidence of consumer studies or advertising expenditures. It has not sustained its burden of proving secondary meaning.

Because Huggable Monkey's trade dress lacks both inherent distinctiveness and secondary meaning, it is unprotectible. The trade dress claim therefore is dismissed.

*Conclusion*

The complaint and the counterclaim are dismissed. Neither side is entitled to attorney's fees. The foregoing constitutes the Court's findings of facts and conclusions of law. This order closes the case and any open motions herein.

SO ORDERED.