**MASTERFOODS USA, Plaintiff,**

v.

**ARCOR USA, INC. and Arcor S.A.I.C., Defendants.**

**No. 02–CV–6442 CJS.**

United States District Court, W.D. New York.

Nov. 4, 2002.

Pasquale A. Razzano, Aimee E. Nassau, Fitzpatrick, Cella, Harper & Scinto, New York, NY, for Plaintiff.

Daniel H. Weiner, Kristin B. Whiting, Hughes Hubbard & Reed LLP, New York, NY, James D. Kole, Nixon Peabody LLP, Rochester, NY, for Defendants.

DECISION ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

SIRAGUSA, District Judge.

## I. Introduction

This case involves a dispute between Plaintiff Masterfoods USA, a division of Mars, Incorporated ("Mars"), the company that makes m & m's® candies, and Defendants Arcor USA, Inc. ("Arcor USA") and Arcor S.A.I.C. ("Arcor International") (collectively "Arcor"), makers and distributors of a competing candy, ROCKLETS. Mars is a Delaware corporation with its principal place of business in McLean, Virginia. Its Masterfoods division does business in Hackettstown, New Jersey. Arcor International has its principal place of business in Cordoba, Argentina. Jurisdiction arises in this Court under the Lanham Act of 1946, as amended, and 28 U.S.C. §§ 1331 and 1338. In addition, the Court has supplemental jurisdiction for the state causes of action under 28 U.S.C. § 1367.

Mars has filed a complaint that raises five causes of action. They are: (1) trade dress infringement under Lanham Act Section 43(a); (2) trademark infringement

under Lanham Act Section 32; (3) a federal claim of trademark dilution under Lanham Act Section 43(c); (4) a state claim of unfair competition and trademark dilution under New York General Business Law § 360–1; and (5) a state common law claim of trademark infringement and unfair competition.

The case is presently before the Court on Mars' application for a preliminary injunction against Arcor on all causes of action. For the reasons that follow, the Court grants the application on the basis of Mars' federal law cause of action for trade dress infringement. Because the Court grants the injunction on this ground, it does not reach Mars' other federal and state claims for injunctive relief.

## II. Preliminary Injunction Standard

■ In general, a district court may grant a preliminary injunction where the moving party establishes: (i) that it is likely to suffer irreparable injury if the injunction is not granted, and (ii) either (a) a likelihood of success on the merits of its claim, or (b) the existence of serious questions going to the merits of its claim and a balance of the hardships tipping decidedly in its favor. *See Bery v. City of New York,* 97 F.3d 689, 693–94 (2d Cir.1996).

## III. Contentions of the Parties

### A. Mars' Claims

As is described in the Complaint, Mars alleges that in May 2002 Arcor commenced marketing, offering for sale and selling sugar shell candy products called ROCKLETS PLAIN and ROCKLETS PEANUT in the United States in packaging that Mars claims is substantially similar to its m & m's® candies products packaging. Mars also claims that in addition, Arcor International has introduced, in other countries of the world, a ROCKLETS

CROCK product, which is sold in packaging that is substantially similar to Mars' m & m's® Crispy candies packaging, and, on information and belief, is planning to import that product as well into the United States. Mars asserts that the individual trade dresses of the ROCKLETS Products are confusingly similar to, and a colorable imitation of, the individual trade dresses Mars uses for each of its m & m's® candies products and the federally registered and common law m & m's® candies products packaging trademarks. Mars states that it learned of Arcor's activities in June 2002. Mattia decl. at ¶ 15. Mars claims that the ROCKLETS Products packages are likely to attract prospective purchasers to Arcor's products on the basis of their recognition of the distinctive combination of elements of Mars' m & m's® candies products' trade dresses and packaging trademarks.

Mars also claims that Arcor's packaging is an intentional attempt to create a confusingly similar imitation of Mars' distinctive m & m's® candies products packaging, mimicking the overall color and graphic scheme of the m & m's® candies products packaging by copying the color combinations and designs used on that unique packaging. Mars states that Arcor's use of their trade dresses for their ROCKLETS Products results in irreparable damage to Mars for which there is no adequate remedy at law. Unless permanently enjoined, Mars alleges that Arcor will continue to distribute their ROCKLETS Products in the infringing trade dresses, thereby resulting in substantial harm to Mars and its goodwill in its m & m's® candies products' trade dresses and packaging trademarks.

Mars filed a reply[1] to Arcor's response to Mars' motion. The reply consisted of

---

1. Arcor's attorney objected, in a letter addressed to the Court, dated October 1, 2002, to Mars' use of Dr. Ford's declaration as a reply as it was submitted well after Arcor filed and served it responsive papers, even though

an affidavit from Dr. Gerald L. Ford, a partner in a marketing research firm, who undertook a survey study "designed to measure the degree, if any, to which the trade dress of [Arcor's] ROCKLETS, plain chocolate candy package..., is likely to cause confusion as to the source, approval, or business affiliation/connection of ROCK-LETS." Ford Suppl. Decl. at ¶ 2. In the survey report, completed on September 30, 2002, Dr. Ford concludes that,

> on a net basis after adjusting the survey data for noise based upon two different control packages, approximately between twenty-nine and forty-one percent (29.22% and 40.70%) of the relevant universe of potential purchases or the chocolate candy expressed the belief that [Arcor's] ROCKLETS are either put out by Mars or are put out with the approval of Mars or that Mars has a business affiliation/connection with the company that puts out ROCKLETS for trade dress reasons. Additionally, the survey results also evidence that approximately twenty-three percent (22.97%) of the relevant universe of potential purchasers of chocolate candy expressed the belief that [Arcor's] ROCKLETS are either put out by Mars or are put out with the approval of Mars or that Mars has an affiliation/connection with the company that puts out ROCKLETS and made specific reference to [Arcor's] package as the reason for their belief.

Ford Suppl. Decl. at ¶ 6. Dr. Ford included the detailed results of his survey in an attached appendix of approximately 500 pages.

## B. Arcor's Response to Mars' Claims

Arcor responds to Mars' arguments in the following five points:

the study was commenced on August 29, 2002, over two weeks prior to Arcor's responsive filings. Arcor asks the Court to strike the study, or, in the alternative, to consider the

- the packaging trade dress that Mars seeks to protect features its world-famous "*m & m*" mark, which is immediately distinguishable from the appearance of Arcor's "ROCKLETS" packaging;
- without the "*m & m*" mark, Mars' trade dress is not inherently distinctive;
- the elements of packaging trade dress that Mars attempts to arrogate—including the color brown for chocolate-based candy, the color yellow for peanut-based candy, an upward-slanting product name, and depictions of the candy product itself—are so widely used in the candy industry that they cannot legitimately be proscribed;
- the elements of trade dress that Mars seeks to enjoin are functional and not eligible for protection; and
- the balance of harms weighs heavily in favor of Arcor.

Arcor's Mem. Opp'n. Prelim. Inj. at 1.

## IV. Legal Standards for Trade Dress Infringement

■ Trade dress and trademarks are both protected under the Lanham Act. Trade dress traditionally concerned the overall appearance of labels, wrappers, and containers used in packaging a product. 1 McCarthy on Trademarks, § 8:1 (4th ed.2002). The Second Circuit has stated that trade dress is "a product's total image and overall appearance as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2nd Cir.1995) (citations omitted). The elements must have been used in a manner that identifies a product's source. 1 McCarthy on Trade-

affidavit of James D. Cole, Esq., as well. In the interest of fairness, the Court will consider both.

marks, § 8:1 (4th ed.2002). Product features that are merely "decorative and aesthetic, with no source-identifying role, cannot be given exclusive rights under trade dress law." *Id.* Historically, the law made a distinction between the law of trademarks and the law of unfair competition, which included trade dress. Today, however, some designations of trade dress can be registered as trademarks. Further, unregistered trade dress is protected by Lanham Act § 43(a) under the same rules as trademarks. 1 McCarthy on Trademarks, § 8:1 (4th ed.2002); *see also* Restatement (Third) of Unfair Competition, § 16, comment a (1995) ("With the abandonment of the distinction between technical 'trademarks' and other indicia of source, the protection of distinctive packaging and product design has been incorporated into the general law of trademarks"). A preliminary injunction may issue to prevent trade dress infringement. *See Kurt S. Adler, Inc. v. World Bazaars, Inc.,* 897 F.Supp. 92, 99–100 (S.D.N.Y. 1995).

■ "To prevail on a claim of trade dress infringement, a plaintiff must establish (1) that its trade dress is distinctive either (a) because it is inherently so or (b) because it has acquired secondary meaning, and (2) that a likelihood of confusion exists between its product and the defendant's product." *Tough Traveler, Ltd. v. Outbound Products,* 60 F.3d 964, 967 (2d Cir.1995) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)). "Even if the plaintiff establishes these elements, the defendant may still avoid liability on a variety of grounds, including the so-called functionality doctrine." *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.,* 916 F.2d 76, 79 (2d Cir.1990), *cert. denied,*

499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 720 (1991).

■ The Court will evaluate the distinctiveness of Mars' m & m's® trade dresses (for chocolate and peanut varieties) according to the test set forth by Judge Friendly in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976), and made applicable to trade dress cases by *Paddington Corp. v. Attiki Importers & Distributors, Inc.,* 996 F.2d 577, 583 (2d Cir.1993). Under that test, trade dresses are classified as either: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. Suggestive and arbitrary or fanciful trade dresses are considered to be inherently distinctive, and therefore always satisfy the first prong of the test for trade dress protection. If a trade dress is descriptive, however, the plaintiff must establish that it has acquired secondary meaning in order to become distinctive. Generic dresses—"those that 'refe[r] to the genus of which the particular product is a species'"—are never protectable. Although each element of a trade dress individually might not be inherently distinctive, it is the combination of elements that should be the focus of the distinctiveness inquiry. Thus, if the overall trade dress is arbitrary, fanciful, or suggestive, it is distinctive despite its incorporation of generic elements *Cf. LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 76 (2d Cir.1985) (despite functionality of individual elements, bag was nonfunctional "when viewed in its entirety").

## V. Findings of Fact

Based upon the evidence[2] presented, the Court makes the following findings of fact pursuant to Federal Rules of Civil Procedure 52(a) and 65. Mars has been and presently is engaged in the produc-

---

**2.** Both parties agreed during oral argument that the Court could make its decision on the basis of the papers submitted, without requiring an evidentiary hearing.

tion, advertisement, promotion and sale of various food, candy and confectionery brand products throughout the United States and the world. One of its largest selling brands is its m & m's® sugar shell chocolate candies. Sales of such candies under the m & m's® trademarks (including, among others, m & m's®, the m & m's® Character trademarks and the m & m's® candies packaging trademarks), currently gross hundreds of millions of dollars annually. The m & m's® chocolate candies specifically involved in this case[3] are the m & m's® Milk Chocolate, and m & m's® Peanut ("m & m's® candies products"). Since their introduction on the United States market, m & m's® candies products have been advertised, promoted and sold in packages having an overall color scheme and graphic design that is arbitrary and inherently distinctive. Furthermore, while some changes in the packaging have occurred over time, the overall appearance of the packaging has remained consistent. Often these candies are purchased by children and purchased on impulse.

Arcor employs over 13,000 people and maintains thirty-one plants in Latin America for the manufacture of more than 1,500 products, including foods, confectionary, chocolates and cookies. It distributes its products in over 100 countries, including the United States. Arcor S.A.I.C. has been in business over fifty years and is the largest worldwide exporter of candy products. Storni decl. at ¶ 4. Arcor USA has conducted business in the United States since 1984, and originally operated under the names Universal Sweets Corp. and Nutrex Corp. Bouwkamp aff. at ¶ 3.

Mars' m & m's® Milk Chocolate candies have been manufactured, advertised, promoted, distributed and sold since at least

as early as 1941. Mattia decl. at ¶ 6. As early as 1948, the m & m's® Milk Chocolate candies packaging has included a brown background, white lettering and, from time to time, has included a display of multiple candy pieces, which are referred to as "lentils." Mars describes the packaging currently in use in the United States for its m & m's® Milk Chocolate candies as follows:

a rectangular paper-based package that consists of a brown background with white lettering. The m & m's® mark appears at an upward slant running across the face of the package and the term "chocolate candies" appears beneath the m & m's® mark. The package also uses a contrasting "lozenge shape" in which the term "Milk Chocolate" appears and a display consisting of multiple yellow, red, green, blue and orange lentils, (sometimes referred to as "cascading lentils"). Finally, the package face features a half-lentil showing a view of the interior of the chocolate lentil.

Mars' Mem. Supp. Prelim. Inj. at 2. The Court finds the description accurate with respect to the plain chocolate sugar shell coated candy package before it on Mars' motion for injunctive relief.

Mars' m & m's® Peanut candies have been manufactured, advertised, promoted, distributed and sold since at least as early as 1954. Mattia decl. at ¶ 7. Further, since at least as early as 1964, the m & m's Peanut candies packaging has included a yellow background with brown lettering and, from time to time, has included multiple lentils in a "cascading lentil" design. Mars describes the m & m's® Peanut candies packaging currently used on the U.S. market as follows:

---

3. Mars included its m & m's® Crispy candies in the request for a preliminary injunction; however, the Court finds that Arcor is not presently selling a Crispy variety of its ROCKLETS candies; thus, the motion is not yet ripe for that product.

a rectangular paper-based package that consists of a yellow background with brown lettering. The m & m's® mark also appears at an upward slant running across the face of the package and the term "chocolate candies" appears beneath the m & m's® mark. The package also uses a contrasting "lozenge shape" area that contains the word "Peanut" and a cascading lentil design consisting of yellow, red, green, blue and orange lentils. Finally, the package face also features a half-lentil showing a view of the interior of the chocolate and peanut lentil.

Mars' Mem. Supp. Prelim. Inj. at 2. The Court finds the description accurate with respect to the chocolate covered peanut sugar shell coated candy package before it on Mars' motion for injunctive relief.

Mars has obtained federal trademark registrations from the United States Patent and Trademark Office that specifically cover the use of the above-described individual m & m's® candies products packaging. These federal registrations, Nos. 1,266,509, 2,549,334, 2,549,335, 1,272,035, 2,575,401 and 2,459,480, are valid, in good standing and in full force and effect, and Registration Nos. 1,266,509 and 1,272,035 are incontestable.

Mars' m & m's® candies products in their distinctive packaging have been extensively and widely advertised and promoted, and have shown substantial sales. Mattia decl. at ¶¶ 11–12. The m & m's® trademark, and m & m's® candies products' packaging trademarks have become famous[4] and well-known to both consumers and the trade, and identify Mars as the exclusive source of candy and other goods to which these trademarks are applied. As a result, the m & m's® trademark, and m & m's® packaging trademarks, have acquired great value and goodwill.

In 1993, Arcor International began selling chocolate-based and peanut-based ROCKLETS candies in Latin America, using nearly the same ROCKLETS packaging that is at issue here. Storni decl. at ¶ 5. In the United States, Arcor has promoted ROCKLETS candies since at least June 1999 when Arcor USA's booth at the All Candy trade show in Chicago featured ROCKLETS candy products. Bouwkamp aff. at ¶ 8. Although representatives of Mars attended that candy show, none observed ROCKLETS packages. Later in 1999, Arcor began selling ROCKLETS candy in the United States. At the 2001 All Candy trade show, Arcor USA distributed samples of ROCKLETS candy made with "a chocolate recipe more attuned to United States consumers than chocolate used for that product sold internationally." Arcor's Mem. Opp'n. Prelim. Inj. at 4; Bouwkamp aff. at ¶ 11.

## VI. Conclusions of Law

### A. Protectability of Mars' Trade Dress

To prevail on its Lanham Act Section 43(a) trade dress infringement claims, Mars must prove two elements. First, that its trade dress is protectable by showing that it is distinctive—that it is either "inherently distinctive" or has acquired distinctiveness through "secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769, 112 S.Ct. 2753,

---

4. Mars' Mem. Supp. Prelim. Inj., at 18, cites to a Middle District of Pennsylvania case in support of this element in which the Court wrote:

All of Mars' M & M's varieties packaging have included a display of cascading individual M & M's candy pieces (the "lentils")

since at least as early as 1994. These candy pieces are "cultural icons" and highly recognizable by the public. They serve to identify the M & M's brand candies to consumers....

*Hershey Foods Corp. v. Mars, Inc.,* 998 F.Supp. 500, 506 (M.D.Pa., 1998).

120 L.Ed.2d 615 (1992); *accord Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir.1997). Second, Mars must prove that Arcor's trade dress has caused, or is likely to cause, consumer confusion. *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377 (2d Cir.1997); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir.1995). In other words, the issue is whether there is a likelihood that "an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 967 (2d Cir.1995) (quotation omitted). In addition, eligibility for protection of an "identifying mark also depends on its non-functionality." *Mana Prods. v. Columbia Cosmetics Mfg.*, 65 F.3d 1063, 1068 (2d Cir.1995); *accord Jeffrey Milstein*, 58 F.3d at 31. Functionality is defined as "the quality essential to the product's purpose." *Mana*, 65 F.3d at 1068 (citing *Two Pesos*, 505 U.S. at 775, 112 S.Ct. 2753). The Court finds a likelihood of success for Mars on its trade dress infringement claims.

■ Mars' trade dress for plain and peanut m & m's® is non-functional and Arcor has not met its burden to prove functionality. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71 (2d Cir.1985). Arcor argues that the background colors of the packaging (brown and yellow) are functional in that they convey whether the candy inside is chocolate (brown) or peanut based (yellow). They have provided numerous examples of the use of these two colors by other candy manufacturers. However, Arcor's arguments regarding functionality require the Court to dissect the elements of Mars' trade dress for its m & m's® packages; yet, the law requires the Court to assess the *"overall impression* created by the logos and the context in which they are found and consider the *totality of factors*

that could cause confusion among prospective purchasers." *Bacardi & Company Ltd. v. New York Lighter Co.*, 97–CV–7140 (JS)(VVP), 2000 U.S. Dist. LEXIS 19852, *21, 2000 WL 298915, 54 U.S.P.Q.2d 1335, 54 Fed.R.Evid. Serv. 380 (E.D.N.Y.2000) (quoting *Streetwise Maps v. Vandam, Inc.*, 159 F.3d 739, 744 (2d Cir.1998)) (emphasis added; internal quotation omitted). Thus, although other manufacturers use the color brown for chocolate candy, and the color yellow for peanut candy, the Court notes that the background color is but one of several similarities between m & m's® and ROCKLETS packaging. Certainly any worthwhile litigation lawyer could distinguish almost every separate aspect of m & m's® packaging and find that just about each element, alone, was functional. However, when viewed as a whole, as the Court must, Mars' trade dress for m & m's® plain and peanut candies are deserving of protection since they are used in commerce, in connection with goods, and the Court finds that Mars is likely to prevail on its contention that this trade dress is inherently distinctive, arbitrary and fanciful. Further, through advertising, Mars has also established a likelihood of proving that the trade dress has acquired a secondary meaning in the marketplace. As a result of both inherent distinctiveness and secondary meaning, Mars' m & m's® milk chocolate and peanut trade dress is entitled to protection under Section 43(a) of the Lanham Act. In addition, the Court finds that Mars is likely to prevail on its contention that Arcor's ROCKLETS trade dress creates a likelihood of confusion with Mars' m & m's® trade dress.

### B. Mars' m & m's® Trade Dress is Distinctive

The elements of m & m's® trade dress are: a brown, for plain, and yellow for peanut, paper-based rectangular package with large sans serif "m & m's" lettering

appearing across the face of each package in an upward slant in contrasting color (white for plain chocolate, and brown for peanut); the words "chocolate candies" in small white letters underneath the m & m's® symbol; cascading lentils of shiny yellow, red, green, orange, blue and brown; an "oval lozenge" above the "m & m's" lettering in which is indicated either "Milk Chocolate" or "Peanut"; and a broken lentil, showing the interior of the candy. The Court finds that Mars is likely to prevail in proving that this trade dress is distinctive, based upon the numerous examples submitted by both parties of other candy products. None of the other products whose actual packages, or photographs of packages, have been presented, has this unique combination of elements.

### C. Likelihood of Confusion—*Polaroid* Factors

█ As with trademark infringement, the plaintiff must show that the defendant's trade dress is likely to cause confusion between the senior and junior products. The Court relies on the *Polaroid*[5] factors for this determination. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75 (2d Cir.1988).

### 1. Strength of Mars' Mark

Mars' m & m's® mark is conceded by defendant to be famous and "instantly recognizable." Arcor Mem. Opp'n. Mot. Prelim. Inj. at 10. With regard to Mars' m & m's® trade dress, the Court finds that it is also strong. The trade dress strength refers to its ability to identify the goods sold as emanating from a particular source. The Court finds that the overall trade dress for m & m's® milk chocolate and peanut candies allows the consumer to quickly identify these two Mars products among dozens of other packages of candy. Thus, the strength of m & m's® trade

dress weighs in favor of Mars' on the issue of likelihood of confusion.

### 2. Degree of Similarity Between the Two Marks

The trade dress of the ROCKLETS candy packages at issue here have a high degree of similarity to Mars' trade dress for its m & m's® milk chocolate and peanut candies. Viewing the two side-by-side, it is clear that Arcor's trade dress for ROCKLETS is highly imitative of Mars' trade dress for m & m's® candies products. The Court finds that the layout, colors and sizes of the packages are similar to one another, except, of course, for the m & m's® on Mars' and the ROCKLETS and Arcor names on Arcor's. The use of the slanted name in contrasting colors, the lozenge, the appearance of shiny multicolored lentils and the brown color of the plain, and yellow color of the peanut, packages, are similar upon first glance. Taking into consideration the trade dress items described above, the Court finds the similarities between the two trade dresses are likely to cause confusion. This factor weighs in Mars' favor.

### 3. Proximity of the Products in the Market Place

Both m & m's® and ROCKLETS are sold in Dollar General Stores and have both been displayed in the same racks. Matta Decl. at ¶ 19. Both are plain chocolate, or chocolate covered peanut candies in hard, colorful shells, therefore, the likelihood is that they will continue to appear together in similar stores in close proximity to one another. They obviously compete for the same business. This factor weighs in Mars' favor.

---

5. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287     F.2d 492 (2d Cir.1961).

## 4. Likelihood Senior User Will Bridge the Gap

As conceded by Mars, this factor—whether the plaintiff produces goods not identical to the defendant's and will likely enter the defendant's market—has no application here, in that the two products are at least substantially similar to one another. Mars' Mem. Supp. Prelim. Inj. at 12.

## 5. Evidence of Actual Confusion

Dr. Ford's survey results for Mars concluded that Arcor's ROCKLETS are mistaken by consumers as being a Mars product, or being a product authorized by Mars, because of the packaging. The survey used, in one "cell," a package of ROCKLETS plain chocolate candy. Two hundred and nine respondents, who were screened for age, gender, affiliation with marketing firms, *etc.*, were shown the ROCKLETS package and asked, "who, or what company, do you believe puts out these candies?" Of the 209 respondents questioned, 79, or 37.80%, answered that the ROCKLETS candies in the brown package were put out by Mars or m & m's®, despite the appearance of "ROCKLETS" and "Arcor" on the packages. Ford Suppl. Decl. at Ex. A, Tab 1. When asked the follow-up question, "what other brand name or names, if any, do you believe are used by the company that puts out these candies," 45 of 209 respondents, or 21.53%, answered either Mars or m & m's®. *Id.* at Tab 2. Dr. Ford had the survey on the brown ROCKLETS test package conducted in nine cities in nine different states in the United States and used six different professional interviewing services. Ford Suppl. Decl. at App. G & I. These are but two examples of the numerous questions asked of respondents in this complex survey of shoppers of chocolate candies.

The survey also used two control cells, one which used a white paper package with the words Arcor and ROCKLETS on it (pictured in Ford Suppl. Decl. at Ex. A, Tab B). The package had a small clear window through which one could see colored lentils. Of the 97 respondents shown this package, 26, or 26.80%, said that they believed Mars or m & m's® put out that candy, while 48, or 49.48%, answered either Arcor or ROCKLETS. Ford Suppl. Decl. at Ex. A, Tab 8. The other control cell used a similar white package, but the candies seen through the small clear window in the package were all white lentils. Of the 121 respondents shown this package, 18, or 14.88%, said that they believed Mars or m & m's® put out that candy, while 46, or 38.02%, answered either Arcor or ROCKLETS.

The Court agrees with Arcor that Dr. Ford's study does not explain whether the subjects confused ROCKLETS with m & m's® simply because the candies are similar in shape and color, or because of the packaging. Dr. Ford's conclusion, however, shows that at least 29.22% of respondents were confused as to the origin of ROCKLETS candies based on the package alone. Ford Suppl. Decl. At ¶ 4. That is a significant number, especially when considering that the names ROCKLETS and Arcor appear on the ROCKLETS packages. Contrary to Arcor's counsel's suggestions, the Court finds that this survey, with the package in isolation, strongly shows that Arcor was successful in imitating the m & m's® trade dress, albeit with a different name on the front. Thus, this factor weighs heavily in Mars' favor.

## 6. Arcor's Bad Faith in Adopting Mark

Mars' m & m's® are sold worldwide and have been widely advertised since at least 1992, also worldwide. In 1992, worldwide sales of m & m's® candies exceeded $11 billion, $8.4 billion of which was in the

United States. Arcor concedes that Mars' "'m & m' mark is instantly recognizable." Arcor Mem. Opp'n. Prelim. Inj. at 10. Mars argues from these facts that Arcor's actual or constructive knowledge of Mars' m & m's® packaging is indicative of bad faith on Arcor's part. *See Generation X Intern. Corp. v. No Excuses Sportswear, Ltd.*, 98 Civ.1935, 1998 U.S. Dist. LEXIS 4693, at *23–*24, 1998 WL 249177 (S.D.N.Y. Apr.3, 1998) ("Actual or constructive knowledge of a prior user's mark is indicative of bad faith, especially when there are strong similarities between the marks"). The similarities between ROCK-LETS packaging and m & m's packaging leads the Court to conclude that Arcor designed its ROCKLETS packages to take advantage of the popularity of m & m's® and present a package of colorful shell coated chocolate and peanut candies with a familiar look and feel to American consumers. Thus, this factor weighs heavily in Mars' favor. *See Sports Auth. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir.1996).

### 7. Quality of Arcor's Product

The Second Circuit takes two approaches to the quality of the junior user's product. An inferior product injures the senior user's reputation because people may think they come from the same source, or a product of equal quality promotes confusion that they come from the same source. *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 95 (2d Cir.1993) (citation omitted). The Court has not had the opportunity to sample the two products and Mars has not made any allegations regarding the quality of Arcor's ROCKLETS candies; thus, the Court will assume for the purposes of the motion that they are of equal quality and, therefore, could promote confusion as to the source of ROCKLETS candies. This factor weighs in Mars' favor.

### 8. Sophistication of the Relevant Consumer Group

Like the candies at issue in *Tootsie Roll Indus. Inc. v. Sathers, Inc.*, 666 F.Supp. 655, 659 (D.Del.1987), the candies here are relatively inexpensive and purchased primarily without a great deal of thought. Often they are purchased by children and purchased on impulse. Mars, therefore, cannot rely on the sophistication and deliberation of candy purchasers to quickly discern that ROCKLETS and m & m's® are not from the same manufacturer. This factor weighs in Mars' favor.

After analyzing the *Polaroid* factors, above, the Court concludes that Mars' is likely to prevail on its contentions that the m & m's® trade dress is non-functional, inherently distinctive and has acquired a secondary meaning. Further, the Court finds that Mars' is likely to prevail on its claim that ROCKLETS trade dress creates a substantial likelihood of confusion.

### VII. Balance of Hardships

■ Since the Court finds that Mars is likely to succeed on its trade dress infringement claims, it must now determine whether the balance of hardships tips decidedly in Mars' favor. FED. R. CIV. P. 65. Unlike a mandatory injunction, the prohibitory injunction sought by Mars here does not require the Court to find that Mars is substantially likely to prevail on its claims. Mars has shown through affidavits that it seeks to protect millions of dollars of m & m's® sales in the United States. Arcor is not being prohibited from selling ROCK-LETS in the United States, but only required not to sell them in infringing packaging. In a case where there is shown a high likelihood of confusion, irreparable harm is presumed. *Omega Importing Corp. v. Petri–Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir.1971); *see Kraft General Foods, Inc. v. Allied Old English, Inc.*, 831 F.Supp. 123 (S.D.N.Y.1993). More-

over, the Court concludes from the evidence presented that the harm to Mars from Arcor's infringing packaging is substantial and unlikely to be reparable by money damages alone, because speculation as to the amount of lost sales, the future inability to accurately account for the amount of such lost sales, and the uncertain results of consumer confusion, represent unknown and incalculable damages. The Court finds, as a matter of law, that the balance of hardships tips decidedly in Mars' favor and will, therefore, issue a preliminary injunction, to remain effective until judgment is entered, or until further order of the Court.

In order to afford some protection to Arcor as a result of the Court's issuance of an injunction, the Court will require Mars to post a bond. Arcor's counsel indicated in court that if the Court were to require the posting of a bond, the amount should be $500,000. Mars has indicated, also through counsel, that it does not oppose the posting of such a bond. The Court finds that a $500,000 bond will sufficiently protect Arcor against the possibility that this Court's preliminary injunction is improperly issued, and, therefore, pursuant to Local Rule of Civil Procedure 65.1, will make the posting of a $500,000 bond by Mars a condition of the issuance of its preliminary injunction.

### VIII. Conclusion

In view of the foregoing, the Court finds that Arcor should be preliminarily enjoined from selling ROCKLETS chocolate and peanut candies in the United States in the packaging at issue here, or any packaging confusingly similar thereto. The Court will issue a separate Order enjoining Arcor in this respect.